UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL CARPENTER,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-705** |
| **MADERE & SONS TOWING, LLC,**<br>    **Defendant** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Third-Party Defendant John W. Stone Oil Distributor, LLC.[1] Defendant and Third-Party Plaintiff Madere & Sons Towing, LLC, opposes the motion.[2] Plaintiff Michael Carpenter also opposes the motion on similar grounds.[3] For the reasons that follow, the motion for summary judgment is **GRANTED**.

## FACTUAL & PROCEDURAL BACKGROUND

This is a maritime personal-injury case. At all relevant times, the Plaintiff, Michael Carpenter, was a Jones Act seaman and was employed as a vessel captain by the Defendant and Third-Party Plaintiff, Madere & Sons Towing, LLC ("Madere").[4] On June 15, 2014, Carpenter was working as the captain of the M/V LADY JOSIE, a vessel owned and operated by Madere.[5] Plaintiff alleges that, on that date while in the course and scope of his employment with Madere, he was injured when he slipped and fell while walking on an exterior deck of the LADY JOSIE.[6] Plaintiff maintains he slipped on soapy water

---

[1] R. Doc. 64.
[2] R. Doc. 72. The Court ordered Madere to re-file its statement of contested issues of fact due to certain deficiencies in its original statement. Madere's amended statement of facts is Record Document 79.
[3] R. Doc. 73.
[4] *See generally* R. Docs. 64-1, 72.
[5] R. Doc. 64-2 at 1, ¶1; R. Doc. 79 at 1, ¶1.
[6] R. Doc. 64-2 at 1, ¶1; R. Doc. 79 at 1, ¶1.

1

that had been left on the deck of the LADY JOSIE by her deckhands.[7]  Plaintiff insists that the substance on which he slipped was "Dawn soap."[8] Plaintiff contends, as a result of the accident, he sustained "serious, disabling[,] and permanent injuries to his lower back and groin area" and has damages of "past and future mental and physical pain and suffering, past and future lost wages, past and future medical expenses, [and] loss of enjoyment of life."[9] Plaintiff filed suit against Madere on March 5, 2015, alleging causes of action for Jones Act negligence, unseaworthiness under the General Maritime Law, and maintenance and cure, including punitive damages for Madere's alleged failure to furnish cure.

On December 11, 2015, Madere sought leave of court to file a third-party complaint against John W. Stone Oil Distributor, LLC ("Stone Oil").[10] In its motion for leave, Madere represented that, in discovering this matter, counsel obtained surveillance video from a camera mounted at Stone Oil's dock that "captured the incident in question."[11] When Carpenter slipped and fell on the M/V LADY JOSIE's deck, the vessel was docked at Stone Oil's fuel dock to offload a plastic drum containing waste oil; to take on a new, supposedly empty, drum; and to refuel.[12] According to Madere, from viewing the surveillance video, it learned that just prior to Carpenter's fall, a "Stone Oil dockhand, without requesting assistance from the crew of the LADY JOSIE and without notifying the crew of the LADY JOSIE, carelessly tosse[d] a replacement barrel onto the deck of the LADY JOSIE."[13]

---

[7] R. Doc. 1 at 1–2.
[8] *See* R. Doc. 64-4 at 9 (First Deposition of Michael Carpenter); R. Doc. 64-5 at 2–4 (Second Deposition of Michael Carpenter).
[9] R. Doc. 1 at 3.
[10] R. Doc. 32.
[11] R. Doc. 32-1 at 2.
[12] R. Doc. 32-1 at 2.
[13] R. Doc. 32-1 at 2.

Madere maintained that, upon "information and belief, the barrel contained oily residue and/or soapy water within it."[14] Madere further represented that after the barrel landed on the LADY JOSIE's deck, the barrel "topple[d] on its side with its topside coming to rest within inches of the walkway on the port side of the superstructure, the exact area in which Plaintiff ultimately [slipped and fell]."[15] According to Madere, "the oily residue and/or soapy water inside the barrel leaked out onto the deck of the vessel and caused Plaintiff to slip."[16] In light of these allegations, the Court granted Madere leave to file a third-party complaint against Stone Oil on January 12, 2016,[17] and Madere's third-party complaint was entered into the record on the same date.[18]

On May 17, 2016, Stone Oil filed a motion for summary judgment seeking the dismissal of Madere's third-party complaint and the claims asserted therein. According to Stone Oil, "there is a complete lack of evidence that Stone Oil or its employees in any way caused or contributed to . . . Carpenter's[] fall aboard the M/V LADY JOSIE."[19] The basis of Madere's third-party complaint is best summarized, according to Stone Oil, as being that "an employee of Stone Oil improperly placed a waste oil disposal barrel on the deck of the LADY JOSIE, which then leaked oily or soapy residue onto the deck and in which plaintiff then slipped."[20] However, Stone Oil maintains there is simply "no evidence to support Madere's allegations against Stone Oil and the Third-Party Complaint should be dismissed, with prejudice."[21]

---

[14] R. Doc. 32-1 at 2.
[15] R. Doc. 32-1 at 2.
[16] R. Doc. 32-1 at 3.
[17] R. Doc. 46.
[18] R. Doc. 47.
[19] R. Doc. 64-1 at 1.
[20] R. Doc. 64-1 at 1.
[21] R. Doc. 64-1 at 1.

3

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] "An issue is material if its resolution could affect the outcome of the action."[23] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[24] All reasonable inferences are drawn in favor of the non-moving party.[25] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[26]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[27] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[28]

---

[22] FED. R. CIV. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[23] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[25] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[26] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[27] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[28] *Celotex*, 477 U.S. at 322–24.

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[29] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[30] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[31] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[32]

## LAW AND ANALYSIS

As the moving party, it is Stone Oil's burden to establish the absence of any genuine issues of material fact and that it is entitled to judgment as a matter of law. Stone Oil notes, and indeed it is undisputed, that not long before the LADY JOSIE arrived at Stone Oil's fuel dock, Ronald Taylor and Gary Fitzgerald, the vessel's deckhands, cleaned the

---

[29] *Id.* at 331–32 (Brennan, J., dissenting).
[30] *See id.* at 332.
[31] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[32] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

deck with Dawn soap.[33] Both Taylor and Fitzgerald testified in their depositions that the LADY JOSIE's deck needed to be cleaned because some waste oil spilled on the deck while they were discharging the waste oil from the vessel at a "hopper barge" owned by Madere in Venice, Louisiana.[34] Madere does not dispute that Taylor and Fitzgerald cleaned the LADY JOSIE's deck with Dawn soap prior to the vessel's arrival at Stone Oil's fuel dock or the reason the deck needed to be cleaned.[35] It is also undisputed that Plaintiff, Michael Carpenter, testified that he slipped on Dawn soap.[36]

It is further undisputed that Carpenter piloted the LADY JOSIE to Stone Oil's fuel dock upon leaving Madere's waste-oil hopper barge.[37] The parties agree that, shortly after arriving at the dock, Cameron Hebert, a Stone Oil employee, obtained a barrel from Stone Oil's warehouse and carried it to the fuel dock and the awaiting LADY JOSIE.[38] It is also undisputed that, upon arriving at the LADY JOSIE's port side, which was parallel to the dock, Hebert lifted the barrel, placed its bottom on the side railing of the LADY JOSIE while holding the barrel upright, and then pushed the barrel onto the vessel's deck.[39] The bottom of the barrel made contact with the deck and wobbled slightly before falling near the port-bow corner of the LADY JOSIE's superstructure.[40]

The parties also agree that, several minutes after the barrel landed on the LADY JOSIE's deck, Gary Fitzgerald picked up the barrel and stood it upright.[41] It is undisputed

---

[33] R. Doc. 64-2 at 1–2; R. Doc. 64-1 at 3–5. *See also* R. Doc. 79 at 3–4, ¶¶1–6.
[34] R. Doc. 64-6 at 9 (First Deposition of Ronald Taylor); R. Doc. 72-1 at 2–3 (Deposition of Gary Fitzgerald).
[35] R. Doc. 79 at 3, ¶¶1–2. *See also* R. Doc. 72 at 1.
[36] R. Doc. 64-4 at 8–9 (First Deposition of Michael Carpenter); R. Doc. 64-5 at 2–4 (Second Deposition of Michael Carpenter); R. Doc. 64-2 at 1, ¶3; R. Doc. 79 at 2, ¶3.
[37] *See generally* R. Doc. 79 at 3–4, ¶¶1–6.
[38] R. Doc. 79 at 4, ¶12; R. Doc. 64-1 at 17, 19
[39] R. Doc. 64-8 (Surveillance Video of Incident).
[40] R. Doc. 64-8 (Surveillance Video of Incident).
[41] R. Doc. 64-1 at 10; R. Doc. 64-9 at 11–14 (Deposition of Gary Fitzgerald); R. Doc. 64-8 (Surveillance Video of Incident). *See also* R. Doc. 79 at 5, ¶¶15–17.

that, not long thereafter, Carpenter was walking down the port side of the vessel from the stern to the bow when he slipped and fell near where the barrel fell to its side before being picked up by Fitzgerald.[42] It is undisputed that Ronald Taylor was in the vicinity of where Carpenter slipped and fell immediately after it occurred.[43] It is also undisputed that Taylor and Fitzgerald were in the immediate vicinity of the barrel after it fell to its side on the LADY JOSIE's deck and they both testified that nothing leaked from the barrel.[44] Although both responded in their depositions that something might have leaked from the barrel,[45] the Court does not consider metaphysical musings about what is possible to be material facts. The Court finds the material facts are not in dispute.

The Court must now determine whether Stone Oil is entitled to judgment as a matter of law. At trial, Madere will bear the burden of proving that the Stone Oil barrel contained oily residue and/or soapy water that leaked onto the LADY JOSIE's deck and that the oily residue and/or soapy water caused or contributed to Plaintiff's slip and fall. To prevail on summary judgment, however, it is Stone Oil's burden to either (1) submit affirmative evidence that negates an essential element of Madere's claim against Stone Oil, or (2) affirmatively demonstrate that there is no evidence in the record to establish an essential element of Madere's claim against Stone Oil.[46] Stone Oil has chosen the second alternative and argues there is a "complete lack of evidence that Stone Oil or its employees in any way caused or contributed to [P]laintiff, Michael Carpenter's, fall

---

[42] R. Doc. 64-2 at 1–2; R. Doc. 79 at 5, ¶¶ 15–18.
[43] R. Doc. 64-2 at 2, ¶¶5–6; R. Doc. 79 at 4–5; R. Doc. 64-6 at 9–10 (First Deposition of Ronald Taylor); R. Doc. 64-7 at 9, 11, 13 (Second Deposition of Ronald Taylor).
[44] R. Doc. 79 at 4–5, ¶¶13–17; R. Doc. 64-7 at 9–11 (Second Deposition of Ronald Taylor); R. Doc. 64-9 at 6, 10–11, 13 (Deposition of Gary Fitzgerald).
[45] *See* R. Doc. 64-7 at 2–3, 8 (Second Deposition of Ronald Taylor); R. Doc. 64-9 at 10 (Deposition of Gary Fitzgerald).
[46] *Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting).

7

aboard the M/V LADY JOSIE."[47] Stone Oil argues that it has met its burden as there is no evidence that the Stone Oil barrel contained any oily substance, and even if it did, there is no evidence that the substance leaked out of the barrel and caused Carpenter to slip and fall. To establish the lack of record evidence supporting Madere's claim against it, Stone Oil relies on the depositions of the Plaintiff, Michael Carpenter; deckhands Ronald Taylor and Gary Fitzgerald; and Stone Oil employees Cameron Hebert and Joshua Buras.

Michael Carpenter testified in his deposition, and indeed was adamant, that he slipped on Dawn soap left behind by Taylor and Fitzgerald when they cleaned the vessel's deck after discharging waste oil from the LADY JOSIE.[48] Carpenter testified that the barrel's final resting place on the LADY JOSIE's deck was "3 or 4 feet away" from where he fell and that it would "have been kind of hard for [something] to leak out of that drum right there and go to that spot," referring to the spot where he ultimately fell.[49] Revisiting this testimony, counsel for Madere then asked Carpenter, again: "The drum that fell over right in the area in which you slipped and fell was a *clean barrel* that was put into the vessel . . . , is that correct?"[50] Carpenter responded, "Yes."[51] Counsel then asked Carpenter, "And that's the barrel that could have been the source of the substance in which you slipped; is that correct?"[52] Carpenter responded: "I honestly don't see how," and in response to follow-up questioning, Carpenter again stated "I just don't see it," explaining that, because there were not any "splashes" coming from the direction of the barrel toward

---

[47] R. Doc. 64-1 at 1.
[48] R. Doc. 64-4 at 8–9 (First Deposition of Michael Carpenter); R. Doc. 64-2 at 1, ¶3; R. Doc. 79 at 2, ¶3.
[49] R. Doc. 64-5 at 13 (Second Deposition of Michael Carpenter).
[50] R. Doc. 64-5 at 14 (Second Deposition of Michael Carpenter) (emphasis added).
[51] R. Doc. 64-5 at 14 (Second Deposition of Michael Carpenter).
[52] R. Doc. 64-5 at 14 (Second Deposition of Michael Carpenter).

the spot where he fell, he did not think that the substance on which he slipped emanated from Stone Oil's barrel.[53]

Ronald Taylor, one of the LADY JOSIE's two deckhands, testified that he believed Carpenter tripped on an exposed face wire on the LADY JOSIE's deck, not any substance that leaked from the barrel.[54] According to Taylor, he inspected the location of Carpenter's fall immediately after it happened, and he noticed that, despite Carpenter's claims that he slipped on Dawn soap, there was no soap in the area and that the deck was "dry."[55] Taylor confirmed that, after Carpenter's fall, he did not see any "oil, soap[,] or sheen" in the area.[56] Instead, Taylor testified that he "clearly" saw Carpenter "trip over that cable."[57] Taylor admitted in his second deposition that Carpenter's tripping over a face wire was his "theory" of what caused the incident,[58] but his testimony that there was no soap on the deck and that the deck was dry did not change.

Gary Fitzgerald testified that he was the deckhand who stood the barrel up after noticing it lying on the deck.[59] Fitzgerald was asked whether, at that point, he noticed anything leaking from the barrel. Fitzgerald responded: "Not that I can remember."[60] Fitzgerald also testified that he has never seen anything leak out of a barrel such as the one that the LADY JOSIE received from Stone Oil on the day of the incident-in-question.[61]

Cameron Hebert, the Stone Oil employee who transferred the subject barrel to the LADY JOSIE, was deposed on May 23, 2016.[62] Hebert testified that, in general, when

---

[53] *See* R. Doc. 64-5 at 13–16 (Second Deposition of Michael Carpenter).
[54] R. Doc. 64-6 at 20 (First Deposition of Ronald Taylor).
[55] R. Doc. 64-6 at 20–22 (First Deposition of Ronald Taylor).
[56] R. Doc. 64-6 at 22–23 (First Deposition of Ronald Taylor).
[57] R. Doc. 64-6 at 20 (First Deposition of Ronald Taylor).
[58] R. Doc. 64-7 at 3 (Second Deposition of Ronald Taylor).
[59] R. Doc. 64-9 at 10–13 (Deposition of Gary Fitzgerald).
[60] R. Doc. 64-9 at 11 (Deposition of Gary Fitzgerald).
[61] R. Doc. 64-9 at 12–13 (Deposition of Gary Fitzgerald).
[62] R. Doc. 72-1 (Deposition of Cameron Hebert).

9

Stone Oil takes possession of barrels from the manufacturer, American Recovery, the barrels "contain no product whatsoever."[63] Hebert further testified that every barrel he has ever handled for Stone Oil has been "bone dry," explaining that if something, whether a liquid substance or some other residue, was in a barrel, he would "feel it swishing around" when transferring that barrel to a customer.[64]

Joshua Buras, another Stone Oil employee, gave a deposition on March 23, 2016.[65] Like Hebert, Buras testified that the barrels (or drums) that Stone Oil supplies to its customers are empty.[66] Buras explained Stone Oil's process for transferring barrels to waiting vessels, stating that, "[i]f the boat tells us that they need an empty American Recovery drum, we go to the warehouse. Usually we carry it to the boat and set it on the deck or hand it to the guy if he's standing there."[67] Buras testified that the barrels are empty when delivered to Stone Oil customers.[68] For example, Buras was asked, "Do you ever turn the barrel over to make sure it won't leak any materials if there is any material in there?"[69] Buras responded, "Well, if it is empty, how are you going to know if it is going to leak?"[70]

Stone Oil has met its burden of affirmatively demonstrating that there is no evidence in the record to establish an essential element of Madere's claim against Stone Oil—*i.e.*, that an oily substance leaked out of the barrel it delivered to the LADY JOSIE and caused or contributed to Carpenter's fall aboard the vessel.

---

[63] R. Doc. 72-1 at 31 (Deposition of Cameron Hebert).
[64] R. Doc. 72-1 at 32 (Deposition of Cameron Hebert).
[65] R. Doc. 64-12 (Deposition of Joshua Buras).
[66] R. Doc. 64-12 at 3 (Deposition of Joshua Buras).
[67] R. Doc. 64-12 at 3 (Deposition of Joshua Buras).
[68] R. Doc. 64-12 at 3–4 (Deposition of Joshua Buras).
[69] R. Doc. 64-12 at 4 (Deposition of Joshua Buras).
[70] R. Doc. 64-12 at 4 (Deposition of Joshua Buras).

Madere, as the party opposing summary judgment, may defeat Stone Oil's motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[71] Madere must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim that Stone Oil caused or contributed to Carpenter's injuries. Madere points to the depositions of the Plaintiff, Michael Carpenter, and the LADY JOSIE's deckhands, Ronald Taylor and Gary Fitzgerald.

In their second depositions, Carpenter and Taylor were each asked outright what role Stone Oil played in the incident. In discussing the barrel received from Stone Oil and whether it was a cause of Carpenter's slip and fall, counsel for Madere engaged in the following exchange with Carpenter:

> Q. Did you notice, when you looked at the video, that after it fell over, it fell over right next to the stairwell and right in front of where you fell down?
>
> A. Yes. A perfect shot.
>
> Q. Right. In your opinion, is that a potential source of the substance that you slipped in on the date of your incident?
>
> A. It could have been.[72]

However, as noted above, later during the same deposition Carpenter conceded that the barrel's final resting place on the LADY JOSIE's deck was "3 or 4 feet away" from where he fell and that it would "have been kind of hard for [something] to leak out of that drum

---

[71] *Celotex*, 477 U.S. at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[72] R. Doc. 64-5 at 12 (Second Deposition of Michael Carpenter).

right there and go to that spot," referring to the spot where he ultimately fell.[73] Counsel for Madere then asked Carpenter: "The drum that fell over right in the area in which you slipped and fell was a *clean barrel* that was put into the vessel . . . , is that correct?"[74] Carpenter responded, "Yes."[75] Counsel then asked: "And that's the barrel that could have been the source of the substance in which you slipped; is that correct?"[76] This time, Carpenter responded, "I honestly don't see how," and in response to follow-up questioning, Carpenter again stated "I just don't see it," explaining that, because there were not any "splashes" coming from the direction of the barrel toward the spot where he fell, he did not think that the substance on which he slipped emanated from Stone Oil's barrel.[77]

A similar discussion was had with Ronald Taylor during his second deposition.[78] Counsel for Stone Oil explicitly asked Taylor, in Taylor's opinion, "what role did Stone play in [Carpenter] falling?" Taylor responded: "I think, personally, maybe, could have been from the drum."[79] Counsel also asked Taylor, however, whether he personally saw anything leak out of the barrel, to which Taylor responded, "I'm not aware," admitting that he was "assuming" that something may have leaked from the barrel and that it was a "guess."[80]

Gary Fitzgerald was also asked during his deposition "what role, if any, [did] Stone play[] in Captain Frank's accident?"[81] Fitzgerald responded that he could not recall from

---

[73] R. Doc. 64-5 at 13 (Second Deposition of Michael Carpenter).
[74] R. Doc. 64-5 at 14 (Second Deposition of Michael Carpenter) (emphasis added).
[75] R. Doc. 64-5 at 14 (Second Deposition of Michael Carpenter).
[76] R. Doc. 64-5 at 14 (Second Deposition of Michael Carpenter).
[77] *See* R. Doc. 64-5 at 13–16 (Second Deposition of Michael Carpenter).
[78] *See* R. Doc. 64-7 (Second Deposition of Ronald Taylor).
[79] R. Doc. 64-7 at 2 (Second Deposition of Ronald Taylor).
[80] R. Doc. 64-7 at 3, 8 (Second Deposition of Ronald Taylor).
[81] R. Doc. 64-9 at 10 (Deposition of Gary Fitzgerald). Captain Frank refers to the Plaintiff.

watching the video but that, "[i]f there was oil in [the barrel], maybe [it] could have leaked out."[82] As noted above, however, Fitzgerald also confirmed that he was the deckhand who stood the barrel up after noticing it lying on the deck, and Fitzgerald was then asked whether he noticed anything leaking from the barrel when he stood it up.[83] Fitzgerald responded: "Not that I can remember."[84] Fitzgerald also testified that he has never seen anything leak out of a barrel such as the one the LADY JOSIE received from Stone Oil on the day of the incident-in-question.[85]

Citing "could have been," "might have been" testimony and outright guesses, Madere attempts to support its claim that leakage from the barrel was the cause of the accident. The Fifth Circuit has held that summary judgment cannot be avoided merely by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[86] "Rather, the non-moving party must set forth specific facts showing the existence of a genuine issue concerning every essential component of its case."[87] "Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because there is no issue for trial unless there is sufficient evidence favoring a nonmoving party."[88]

The evidence in the record shows that Carpenter testified he slipped on Dawn soap and the barrel's final resting place on the LADY JOSIE's deck was "3 or 4 feet away" from where he fell and it would "have been kind of hard for [something] to leak out of that

---

[82] R. Doc. 64-9 at 10 (Deposition of Gary Fitzgerald).
[83] R. Doc. 64-9 at 11 (Deposition of Gary Fitzgerald).
[84] R. Doc. 64-9 at 11 (Deposition of Gary Fitzgerald).
[85] R. Doc. 64-9 at 12–13 (Deposition of Gary Fitzgerald).
[86] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations and internal quotation marks omitted). *See also Lawrence v. Federal Home Loan Mortg. Corp.*, 808 F.3d 670, 673–74 (5th Cir. 2015).
[87] *Boudreaux*, 402 F.3d at 540 (citations and internal quotation marks omitted).
[88] *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

drum right there and go to that spot." Taylor testified that Carpenter tripped on a face wire and that he, personally, did not see anything leaking from the barrel, admitting that his belief that something "might have" leaked from the barrel was based on his assumptions and was a "guess."[89] Gary Fitzgerald testified that he, himself, picked up the barrel after it fell but did not notice anything leaking from the barrel and has never seen anything leak from such a barrel.[90] Stone Oil employee Cameron Hebert testified that every barrel he has ever handled for Stone Oil has been "bone dry," explaining that if something was in a barrel, he would "feel it swishing around" when transferring the barrel to a customer. Joshua Buras, another Stone Oil employee, testified that the barrels Stone Oil supplies to its customers are empty upon delivery.[91]

Madere also points to the surveillance video of Carpenter's slip and fall obtained from Stone Oil's fuel dock. The surveillance video shows the barrel falling over onto the deck, but the video does not show any substance leaking from the barrel onto the deck.[92] Neither does the video show any substance on the LADY JOSIE's deck in the vicinity of the barrel.

Madere has failed to call the Court's attention to supporting evidence already in the record to establish that a substance leaked from the barrel onto the deck causing or contributing to the Plaintiff's injury.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by John W. Stone Oil Distributor, LLC, be and hereby is **GRANTED**.

---

[89] R. Doc. 64-7 at 3, 8 (Second Deposition of Ronald Taylor).
[90] R. Doc. 64-9 at 11 (Deposition of Gary Fitzgerald).
[91] R. Doc. 64-12 at 3 (Deposition of Joshua Buras).
[92] R. Doc. 64-8 (Surveillance Video of Incident).

**New Orleans, Louisiana, this 29th day of June, 2016.**

_____*Susie Morgan*_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**